UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JAYNE TAPPE                                CIVIL ACTION NO. 17-cv-1384

VERSUS                                     JUDGE DOUGHTY

DIT, LLC, ET AL                            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Samuel Tappe, a resident of Caddo Parish, enrolled in classes at the Divers Institute of Technology ("DIT") in Seattle, Washington.  He was, unfortunately, found dead in his Seattle apartment two days after a deep dive.  Samuel's mother, Jayne Tappe ("Plaintiff" or "Ms. Tappe"), filed this wrongful death and survival suit against DIT.

Before the court is DIT's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Transfer Venue (Doc. 12).  DIT argues that the court lacks personal jurisdiction over it and should dismiss the complaint without prejudice, or in the alternative, transfer the action to the Western District of Washington, which is a more convenient venue and can exercise personal jurisdiction over DIT.  For the reasons that follow, it is recommended that the motion be granted by transferring venue of this action to the Western District of Washington.

### Relevant Facts

On a pretrial motion that challenges personal jurisdiction, where no evidentiary hearing is held, the uncontroverted allegations in the plaintiff's complaint must be taken as

true, and any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor.  Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir.1990).  The following recitation of facts is based on the allegations in the complaint (except as Plaintiff agreed during briefing were different) and the uncontested affidavit testimony of the executive director of DIT.

Samuel was a member of the United States Army.  After completing his enlistment and returning to his home in Shreveport, he enrolled in DIT by completing an application on the school's website.  He was accepted and later signed an enrollment agreement at the school's offices in Seattle, Washington.  Classes at the school are limited to no more than 30 students, admission standards are demanding, and tuition and fees exceed $30,000 for a 28-week course.

Samuel's school session began in April 2016.  He and his classmates engaged in a deep 124-feet dive in Lake Washington on or about October 26, 2016.  Plaintiff alleges that within 12 to 24 hours after the dive, two of Samuel's classmates suffered from decompression sickness, and at least one of them was treated in a decompression chamber.

Samuel, who had received a commendation for perfect attendance, did not attend class or testing on the following two days.  No one from DIT called Samuel or went to his apartment, which was only five or six blocks from the campus, to check on him.  A classmate asked the Seattle police to check on Samuel on the evening of October 28, 2016, after Samuel did not respond to calls or answer the door.  The police and fire department found Samuel deceased and opined that his death was the result of a complication from diving.

Plaintiff asserts claims for survival damages and wrongful death.  She alleges that "the equipment used during the deep dive was faulty, improperly maintained, and/or contained an improper mixture of gases for use during the October 26, 2016 dive."  She alleges that DIT "negligently failed to check on" Samuel after he failed to attend class and testing, and she contends that DIT "failed to properly maintain the diving equipment used" during the deep dive.

DIT's motion is accompanied by an affidavit from its executive director, who sets forth several facts regarding the school.  First, it has been owned and operated by DIT, LLC since June 2000.  The LLC was formed under Washington law, and its principal place of business is Seattle.  It has no office, real estate, or bank accounts in Louisiana.  None of the principals of the LLC reside in Louisiana.  The school is licensed under the laws of the State of Washington.  It does not purposefully recruit students in Louisiana, nor does it advertise in any Louisiana-based television, radio, or print media.  Between 2012 and 2018, DIT enrolled 1,500 students, only six of whom were Louisiana residents, making them only 0.4% of DIT students during that time.

**Analysis**

**A. Personal Jurisdiction**

The court should transfer venue of this civil action to the Western District of Washington, which will be able to exercise personal jurisdiction over DIT.  There is, therefore, no need to make a definitive decision as to whether this court could exercise personal jurisdiction over DIT.  It is worth noting, however, that the facts strongly suggest that there is no basis to exercise such jurisdiction.

General jurisdiction over DIT would be appropriate only if the out-of-state corporation had continuous corporate operations within Louisiana so substantial and of such a nature as to justify suit against it in Louisiana on causes of action entirely distinct from those activities. DIT's activities in Louisiana would have to be so "continuous and systematic" as to render the company "essentially at home in the forum State." Daimler AG v. Bauman, 134 S.Ct. 746, 754 (2014).

That DIT's website was viewable in Louisiana and it six students from Louisiana over the last six years is not sufficient to render DIT at home in Louisiana so that it could be sued here by any person for claims of any nature. The undersigned applied the general jurisdiction principles in a similar case and recommended a finding of no general jurisdiction in Louisiana over a Caribbean university in a suit brought by a Louisiana student under the Americans with Disabilities Act. Kober v. American University of Caribbean NV, Inc., 2012 WL 2317029 (W.D. La. 2012). General jurisdiction is similarly lacking over DIT in this case.

For this court to exercise specific jurisdiction over DIT, Ms. Tappe's suit must arise out of or relate to DIT's contacts with Louisiana. The plaintiff's choice of forum is relevant, but so is the relative interest of the forum state, and the "primary concern" is the burden on the defendant of litigating in a distant forum. Bristol-Myers Squibb Co. v. Superior Court of California, 137 S.Ct. 1773, 1780 (2017). This lawsuit does not arise out of any activity of DIT taken in or directed toward Louisiana. Rather, arises entirely from alleged actions or inactions that occurred in Seattle. Accordingly, there is significant doubt that this court could properly exercise specific jurisdiction over DIT in this case.

Plaintiff asks for time to conduct discovery related to personal jurisdiction.  She states that she wishes to explore the full extent of DIT's online activity and its recruiting activities in Louisiana.  Ms. Tappe's wrongful death and survival claims do not arise from such online or recruiting contacts (as required for specific jurisdiction), and there is no indication that the activities might be so continuous and systematic to essentially render DIT a Louisiana company as required to exercise general jurisdiction.  In any event, a transfer of venue is in order even if the court could exercise personal jurisdiction over DIT.

### B.  Grounds for Venue; Authority to Transfer

Plaintiff's complaint asserts that the court has jurisdiction based on 28 U.S.C. § 1332 (diversity of citizenship).  She also invokes 28 U.S.C. § 1333 (admiralty, maritime) on the grounds that the alleged wrongful acts occurred in navigable waters and had a significant relationship to traditional maritime activity.

Venue in a typical diversity case is governed 28 U.S.C. § 1391, which provides that "a civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or admissions giving rise to the claim occurred … ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  Venue in Washington is proper under this statute, but there is no apparent basis for venue in Louisiana.

When a case is filed in an improper venue, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been

brought." 28 U.S.C. § 1406(a).    Even if a court is a proper venue, it may order a change of venue pursuant to 28 U.S.C. § 1404(a).  It provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

DIT argues that the court lacks personal jurisdiction over it, but a court which lacks personal jurisdiction may nonetheless transfer a case to a district where venue is proper and where personal jurisdiction can be had over the defendant.  The transfer may be accomplished under Section 1404(a) or Section 1406(a). PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland), 260 F.3d 453, 460 n. 7 (5th Cir. 2001); Bentz v. Recile, 778 F.2d 1026 (5th Cir. 1985); Waterman Steamship Corp. v. Southern Machinery Co., 872 F.Supp. 332, 334 (E.D. La. 1994).

Plaintiff has also invoked the court's admiralty jurisdiction, and it has been held that an admiralty or maritime claim is not a civil action for purposes of the Section 1391 venue statute.  There is, instead, venue wherever a district court has jurisdiction over the defendant. Dunn v. Hatch, 2015 WL 5080483, *2 (W.D. Wash. 2015), citing Richoux v. R&G Shrimp Co., 126 F.Supp. 2d 1007, 1009 (S.D. Tex. 2000).  The rules governing a change of venue pursuant to Section 1404 are, however, still applicable because 28 U.S.C. § 1390(b) provides that the chapter of general venue statutes shall not govern the venue of a civil action in which the district court exercises jurisdiction under Section 1333 "except that such civil actions may be transferred between district courts as provided in this chapter."

### C. Section 1404(a) Analysis

Even if Plaintiff convinced the court that the Western District of Louisiana is a proper venue and can exercise personal jurisdiction over DIT for these claims, a change of venue could still be ordered pursuant to Section 1404(a). A party who requests a transfer must "clearly demonstrate" that a transfer is for the convenience of parties and witnesses, in the interest of justice. In re Volkswagen of America, Inc., 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Plaintiff's choice of venue should be respected unless the Western District of Washington is "clearly more convenient" than this venue. But if DIT demonstrates that the Western District of Washington is clearly more convenient, it has shown good cause, and the district court should grant the transfer. Id.

The Fifth Circuit has adopted private and public interest factors that are examined in such contests. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. In re Volkswagen, 545 F.3d at 315. The factors are appropriate for most cases, but they are not necessarily exhaustive or exclusive, and none can be said to be of dispositive weight. Id., citing Action Indus., Inc. v. U.S. Fid. & Guar. Corp., 358 F.3d 337, 340 (5th Cir. 2004).

The first three factors weigh heavily in favor of Washington as a proper venue. Almost all sources of proof of liability, whether witnesses, documents, or equipment, will be found in the Seattle area.  None or virtually none will be found in Louisiana.  As for compelling the appearance of witnesses, subpoenas issued for a trial in the Shreveport court may generally be served within the district, or outside the district if within 100 miles of the place specified for the hearing or trial.  Fed. R. Civ. Pro. 45(b)(2).  Witnesses located in the Seattle area would fall outside the range of this court's subpoena power, but the Washington court could require their appearance.  As for the cost of attendance for willing witnesses, Ms. Tappe is the only witness identified in the record who would have to travel from Louisiana to Washington if the case were tried there.  But it is likely that several witnesses would have to travel from Washington to Louisiana if the case were tried in this court.

With respect to the relevant public interest factors, the local interest would appear to be greater in the Seattle area, where Samuel died and was allegedly exposed to negligence.  There is a significant likelihood that Washington law will govern some or all of the principal claims, and the Washington court will obviously be more familiar with that law than this Louisiana court.  To the extent admiralty/maritime law is applicable, the Seattle area courts likely have more experience in that area than this north Louisiana court. Transferring venue could also avoid the potential for unnecessary conflict of laws disputes.

**Conclusion**

DIT has made a compelling case that favors transfer of venue.  Plaintiff opposed DIT's motion by briefing the personal jurisdiction issues, but she did not address DIT's

alternative request for a change of venue.  The undersigned is convinced, after reviewing all relevant facts and factors, that it has been clearly demonstrated that a transfer of venue will best serve the convenience of parties and witnesses, in the interest of justice.  Under the facts of this case, the best exercise of this court's discretion is to transfer venue to the Western District of Washington.

Accordingly,

**IT IS RECOMMENDED** that DIT's **Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Transfer Venue (Doc. 12)** be **granted** by transferring venue of this civil action, pursuant to 28 U.S.C. § 1404(a), to the Western District of Washington.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.   See

Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of August,

2018.

Mark L. Hornsby
U.S. Magistrate Judge